# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# URBANA DIVISION

| | |
|---|---|
| JERMAINE PETTIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 11-2283 |
| | ) |
| DR. PAUL TALBOT, | ) |
| | ) |
| Defendant. | ) |

## OPINION

Plaintiff, proceeding *pro se*, was housed at Danville Correctional Center at the time he filed this cause of action. Now before this Court is Defendant Talbot's Motion for Summary Judgment [d/e 35] on Plaintiff's claim for deliberate indifference to Plaintiff's serious medical needs.

Summary judgment will be granted. Plaintiff has not come forth with evidence sufficient to create a genuine issue of material fact as to whether Defendant Talbot was aware of a substantial risk of serious harm to Plaintiff and consciously disregarded that risk during the times Plaintiff sought medical services for his right knee injury.

Plaintiff did not file a response to Defendants' Motion for Summary Judgment though he was given the opportunity to do so. Therefore, the Court will take Defendant Talbot's Undisputed Material Facts as true.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a material dispute through specific

cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(1)(B). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. *Id.*; *Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. *Id.*

## FACTS

On January 21, 2009, Plaintiff injured his right knee during a basketball game at Western Illinois Correctional Center. (Dft's MSJ, UMF #2). The next day, January 22, 2009, Plaintiff was seen by a doctor at Western Illinois Correctional Center who opined that while Plaintiff had some crepitation of his right knee, there was no swelling or discoloration noted. (Dft's MSJ, UMF #3). Plaintiff was prescribed Motrin and ice, and was told to return to the health care unit as needed. (Dft's MSJ, UMF #3). Ultimately, Plaintiff had eight more visits with the nurses on staff, five more visits with the physicians on staff, and underwent two x-rays while he was at Western Correctional Center following the January 21, 2009 injury. (Dft's MSJ, UMF #4). The x-rays taken at Western revealed a normal right knee with no bony or joint abnormalities. (Dft's MSJ, UMF #5).

On February 24, 2010, Plaintiff was transferred to Vandalia Correctional Center where he went to the health care unit on three different occasions. (Dft's MSJ, UMF #7). Plaintiff's right knee was evaluated, and it was again determined that there was no swelling or crepitus. (Dft's MSJ, UMF #7). On March 10, 2010, Plaintiff was transferred to Danville Correctional Center where he currently resides. (Dft's MSJ, UMF #8). Plaintiff first saw Defendant Talbot there on April 3, 2010, at which time Defendant Talbot examined Plaintiff and noted that Plaintiff's right knee patella was tight in place, there was no ecchymosis, bony abnormality, edema, redness or bruising, swelling, tenderness on examination, or limited range of motion of Plaintiff's right knee. (Dft's MSJ, UMF #9).

On April 28, 2010, Defendant Talbot ordered a right knee sleeve for Plaintiff to address Plaintiff's continuing complaints of pain. (Dft's MSJ, UMF #10). On September 7, 2010, it was noted that Plaintiff was not compliant with the order to wear the knee sleeve, and Plaintiff was prescribed Ibuprofen and was again advised to wear his knee sleeve. (Dft's MSJ, UMF #11). On November 23, 2010, Plaintiff went to the health care unit and insisted that an MRI be performed of his right knee. (Dft's MSJ, UMF #12). Defendant Talbot examined Plaintiff and noted that the latter's gait appeared normal, his right knee was not swollen or red, and recommended that Plaintiff take 600 mgs of Ibuprofen for four weeks. (Dft's MSJ, UMF #12). On January 6, 2011, Plaintiff again went to the health care unit for his right knee where Defendant Talbot examined him and noted Plaintiff's normal gait, no antalgic, no swelling, and ordered a repeat x-ray of Plaintiff's right knee and prescribed 500 mgs of Naproxen twice a day for six weeks due to Plaintiff's continued complaints about pain. (Dft's MSJ, UMF #13).

The third x-ray performed on Plaintiff's right knee on January 12, 2011 showed little change when compared with his two prior x-rays, and specifically showed no loose body or bony

fracture and no subluxation or sizeable joint effusion. (Dft's MSJ, UMF #14). Plaintiff underwent another x-ray on August 23, 2011, and the three views performed showed no fracture or significant arthritic change. (Dft's MSJ, UMF #15). On September 1, 2011, after Plaintiff's complaints of pain continued and despite no objective findings on physical examination or radiographs, Defendant Talbot requested an MRI for Plaintiff's right knee. (Dft's MSJ, UMF #17).

On November 4, 2011, Plaintiff underwent an MRI of his right knee and the report indicated, among other things, that there could be a "radial tear" to the medial meniscus which would need to be "clinically correlated." (Dft's MSJ, Exh. 2, Talbot Aff. ¶ 12, Exh. A Bates no. 184-85). Had a tear definitely been present, the MRI report would have indicated that. (Dft's MSJ, UMF #19). A possible condition on an MRI can be "clinically correlated" via a follow-up physical examination and if no such condition is identified during that examination, the possible condition may be ruled out. (Dft's MSJ, UMF #20). Plaintiff had several follow-up appointments with Defendant Talbot after the MRI, and after further physical examination, Defendant Talbot opined that there was no definite tear of Plaintiff's medial meniscus. (Dft's MSJ, UMF #21). Defendant Talbot diagnosed Plaintiff with chronic knee pain and then prescribed Plaintiff more pain medication. (Dft's MSJ, UMF #21).

After Plaintiff reported side effects from the pain narcotics, Defendant Talbot worked with him to adjust his pain medication to prevent any further side effects. (Dft's MSJ, UMF #22). Since Plaintiff was transferred to Danville Correctional Center, he has been examined by Defendant Talbot thirteen separate times. (Dft's MSJ, UMF #26). Defendant Talbot performed an objective physical examination in addition to a variety of condition-specific tests. (Dft's MSJ, UMF #26).

## ANALYSIS

Defendant Talbot argues that his visits with Plaintiff show no deliberate indifference, as Defendant Talbot examined and treated Plaintiff on thirteen separate occasions during which times he performed an objective physical examination, conducted condition-specific tests to determine the cause of Plaintiff's alleged continued right knee pain, ordered two x-rays and an MRI, and prescribed pain medication for Plaintiff's alleged pain. Defendant Talbot further argues that Plaintiff cannot demand specific treatment and is unqualified to opine as to whether Defendant Talbot should have taken additional action beyond the medical care he provided, such as referral to an outside specialist.

Prison officials violate the Eighth Amendment proscription against cruel and unusual punishment when they display "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The injury or need must be objectively serious, and the official must personally know of the risk and consciously disregard it. *See Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999); *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). An objectively serious injury or medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) (quoting *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997))).

Here, the undisputed evidence in the record shows that Defendant Talbot did not disregard Plaintiff's complaints about his right knee or fail to examine and treat Plaintiff. Indeed, the record evidence shows that Defendant Talbot conducted examinations of Plaintiff,

prescribed a knee sleeve for Plaintiff to wear, ordered additional x-rays, and ordered an MRI as Plaintiff himself requested. The evidence additionally shows that when Plaintiff complained of side effects from the prescribed pain medication, Defendant Talbot adjusted it on different occasions by prescribing different medications in an attempt to prevent any side effects. As Defendant Talbot points out, Plaintiff made numerous allegations in his Complaint that Defendant Talbot was deliberately indifferent because he did not order an MRI of Plaintiff's knee, though Plaintiff had already undergone an MRI at the time he filed his Complaint. No genuine issue of material fact exists as to whether the delay in ordering an MRI amounted to deliberate indifference on the part of Defendant Talbot. The medical care Plaintiff received "may not have been entirely to his satisfaction, but the Constitution does not guarantee a prisoner's choice of a physician, a mode of treatment, or a place of treatment, nor does it (or could it) guarantee a particular outcome or level of comfort in the face of physical maladies." *Gerald v. Ind. Dep't of Corr.*, No. 1:08-cv-706-DFH-TAB, 2009 WL 1795178, at *3 (S.D. Ind. June 23, 2009) (citations omitted). It is also not the courts' practice to pass judgment upon whether the treatment decision made was the correct one. *See Estelle*, 429 U.S. at 107-08 (deciding that the lower appellate court erred in holding that the alleged insufficiency of medical treatment required reversal and remand); *Pinon v. Wisconsin*, 368 F. Supp. 608, 610 (E.D. Wis. 1973) (noting courts' general refusal to second-guess professional judgment of physicians who actually treat inmates)*; see also Maize v. Normand*, 2013 WL 1288046, at *3 (E.D. La. March 11, 2013) ("[M]atters of professional medical judgment are better left to the medical expertise of physicians rather than to the legal expertise of judges."); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (noting that the courts are not to engage in every case in the process of second-guessing the adequacy of medical care that the state provides).

Plaintiff's deposition testimony reveals that he simply disagrees with Defendant Talbot's diagnosis and treatment plan, and believes he has an injury that is ongoing and that demands more than what Defendant Talbot has determined is appropriate. As Plaintiff himself conceded, he has no medical expertise, training, or experience. Further, as the case law cited above provides, this Court will not pass judgment on whether the treatment decisions made by Defendant Talbot in these particular circumstances have been the correct decisions.

For a medical professional to be liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents "'such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008) (quoting *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998)); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). Here, the Court cannot say that the evidence suggests that Defendant Talbot made a decision about Plaintiff's treatment that represents a substantial departure from accepted professional judgment. Thus, the Court can say that the evidence before it simply does not raise a question of whether Defendant Talbot was deliberately indifferent to Plaintiff's serious medical needs.

Finally, given the Court's finding that there is no genuine issue of material fact to warrant a trial, the Court does not reach the issue of qualified immunity.

**IT IS THEREFORE ORDERED:**

> **1) Defendant Dr. Talbot's Motion for Summary Judgment is GRANTED [d/e 35]. The Clerk of the Court is directed to enter judgment in favor of Defendant Dr. Talbot and against Plaintiff. This case is terminated, with the parties to bear their own costs.**
>
> **2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).**

**3) If Plaintiff wishes to proceed in forma pauperis on appeal, his motion for leave to appeal in forma pauperis must identify the issues Plaintiff will present on appeal to assist the Court in determining whether the appeal is taken in good faith. See Fed. R. App. P. 24(a)(1)(c);** *see also Celske v. Edwards*, **164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith.");** *Walker v. O'Brien*, **216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee regardless of the outcome of the appeal.**

ENTERED this 17th day of July, 2013.

                                        s/ David G. Bernthal
                            _____
                                  DAVID G. BERNTHAL
                        UNITED STATES MAGISTRATE JUDGE